# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | **Case No. 17-cr-00253-PWG** |
| **KOKOU AZIANBIDJI** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Kokou Azianbidji's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 332. In March 2019, Mr. Azianbidji was sentenced to a 44-month term of imprisonment after pleading guilty to conspiracy to commit bank fraud, in violation of 18 U.S.C § 1349, and aggravated identity theft, in violation of 18 U.S.C. § 1028(a)(1). Plea Agreement, Ex. 1, ECF No. 338; Judgment, ECF No. 256. Mr. Azianbidji is currently serving his sentence at Moshannon Valley CI in Philipsburg, PA. Mot. Mem. 1, ECF No. 332; Gov't Resp. 15, ECF No. 337. He has served approximately 77% of his sentence. Reply 2, ECF No. 342. In his motion, he requests that the Court release him in light of the global COVID-19 pandemic and its potential impact on him due to his health conditions. Mr. Azianbidji seeks a reduction of his sentence to time served, or alternatively, an order modifying his judgment to add 15 months to his term of supervised release. Mot Mem. 1. The Government opposes Mr. Azianbidji's motion for the reasons explained below. I have reviewed all the materials[1] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons discussed below, Mr. Azianbidji's motion is GRANTED.

---

[1] The motion is fully briefed. *See* ECF Nos. 332, 337, and 342.

**BACKGROUND**

From approximately December of 2016 through April of 2017, Mr. Azianbidji engaged in a conspiracy to defraud financial institutions. Plea Agreement. On November 30, 2018, Mr. Azianbidji pleaded guilty to conspiracy to commit bank fraud and aggravated identity theft. *Id.* On March 29, 2019, he was sentenced to 20 months on the conspiracy to commit bank fraud charge and 24 months on the aggravated identity theft charge. Judgment. While Mr. Azianbidji's full term release date is October 23, 2021, Mot. Mem. 3, the Bureau of Prisons ("BOP") projects that Mr. Azianbidji will be released on April 4, 2021. *See* Bureau of Prisons Inmate Locator for Kokou Azianbidji, Register Number: 85388-054, *available at* https://www.bop.gov/inmateloc/ (last visited Jan 14, 2021).

Mr. Azianbidji, currently 51 years old, alleges in his motion that he suffers from hyperlipidemia, hypertension, and is obese. Mot. Mem. 3; Medical Records 2, ECF No. 334. Hyperlipidemia (commonly known as high cholesterol) and obesity are conditions that may increase the risk of severe illness should the person contract COVID-19. *See, e.g.,* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7263494/ (last visited Jan 14, 2021) (noting that "the level of cellular cholesterol is a core contributor to [COVID-19] viral entry); https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan 14, 2021) (noting that people who are overweight may be at an increased risk of contracting a severe case of COVID-19). Further, hypertension (or elevated blood pressure) is a comorbidity that may exacerbate symptoms of COVID-19. *See, e.g.,* https://www.covid19treatmentguidelines.nih.gov/overview/ (last visited Jan 14, 2021).

In opposition, the Government argues that Mr. Azianbidji's medical conditions are not serious enough to present an increased risk for severe illness from COVID-19. Gov't Resp. 8-15.

The Government contends that Mr. Azianbidji has not been diagnosed with hypertension, although they concede that he has elevated blood pressure. *Id.* at 9-10. The Government also contends that because Mr. Azianbidji's conditions are responding well to medication, he is not at an increased risk of severe complications should he contract COVID-19. *Id.* at 11-12. However, these conditions can become exacerbated when combined with COVID-19, thus rendering the risks of severe complications unknown.

Further, the Government argues that "the BOP has taken aggressive action to mitigate the danger of COVID-19." *Id.* at 15. To that end, 12 inmates at Moshannon Valley CI are currently infected with COVID-19, 2 inmates have died, and 178 inmates have tested positive and recovered. Private Facilities, https://www.bop.gov/coronavirus/ (last visited Jan. 15, 2021). Given the exponential rise in cases around the country, and specifically within the BOP, it stands to reason that Moshannon Valley CI is experiencing an increased rate of COVID-19 cases. *See* https://www.npr.org/sections/health-shots/2020/09/01/816707182/map-tracking-the-spread-of-the-coronavirus-in-the-u-s; https://www.bop.gov/coronavirus/ (last visited Jan 14, 2021); *Wise v. United States*, Cr. No. ELH-18-72, 2020 WL 2614816 (D. Md. May 22, 2020) (noting that it would be "pollyannaish" to believe that some correctional institutions would survive the COVID-19 pandemic unscathed). Among public federal prisons, there have been over 6,000 reported cases of inmates contracting COVID-19, and there have been over 180 deaths attributable to the virus.[2] *See* https://www.bop.gov/coronavirus/ (last visited Jan 14, 2021). Further, Centre County, Pennsylvania, where Moshannon Valley CI is located, has reported over 9,000 total cases, and over 150 COVID-19 deaths. *See* https://www.health.pa.gov/topics/disease/coronavirus/Pages/

---

[2] The distinction between public and private prisons is relevant as private prisons utilize different reporting methods than BOP run facilities.

3

Cases.aspx (last visited Jan 14, 2021). As such, COVID-19 presents a significant threat to Moshannon Valley CI inmates with underlying health issues, including Mr. Azianbidji.

Mr. Azianbidji filed for compassionate release with the warden of Moshannon Valley CI on May 20, 2020, and his request was denied on June 24, 2020. Inmate Request to Warden, Ex. 2, ECF No. 332. The Government disputes that Mr. Azianbidji has exhausted his administrative remedies on the grounds that he did not raise his underlying medical conditions in his request to the warden. Gov't Resp. 5-6. Further, the Government asserts that but for the COVID-19 pandemic, Mr. Azianbidji would have been required to serve his full sentence due to the seriousness of the crime and his past criminal record. *Id.* at 19.

## DISCUSSION

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). However, there is an exception when modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). Here, Mr. Azianbidji requests a modification of his sentence for "compassionate release" under the First Step Act, as amended.[3] The First Step Act permits a defendant to petition a federal court directly after exhausting all administrative rights whenever "extraordinary and compelling reasons" warrant a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Under the statute, I must do the following: (1) determine whether the petitioner has fully exhausted all administrative remedies or 30 days have passed since the BOP received the request; (2) determine whether "extraordinary and compelling reasons" warrant a sentence reduction that is "consistent"

---

[3] The "compassionate release" provision of the 1984 First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A)(i), permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP"). In 2018 Congress amended the compassionate release mechanism when it enacted the First Step Act of 2018. *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended, the compassionate release provision allows the court to act on a motion for compassionate release filed by a defendant.

with applicable policy statements issued by the Sentencing Commission; and (3) consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." *Id.*

I.   **Administrative Exhaustion**

A court may only consider a prisoner's motion for compassionate release if the prisoner has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or if 30 days have passed since the warden of a defendant's facility received such a request. 18 U.S.C. § 3582(c)(1)(A). This condition is satisfied. The Government responded to Mr. Azianbidji's motion by arguing that he has not exhausted his administrative remedies because he did not raise his underlying medical conditions in his request to the warden. Gov't Resp. 5-6. Although the Fourth Circuit has not weighed in on this issue, district courts in this circuit have found that exhaustion is not conditioned on a defendant raising specific "arguments" or "claims" in their request to the warden. *See United States v. Fletcher*, C.A. No. TDC-05-0179-01, WL 2020 3972142, at *2 (D. Md. July 13, 2020) (finding "the statute includes no language conditioning exhaustion on precise identity between the specific arguments made in the request to the Warden and those made in the motion filed in the court."); *United States v. Gutman*, C.R. No. RDB-10-0069, 2020 WL 2467435, at *1 (D. Md. May 13, 2020) (finding that a clear and unambiguous request for compassionate relief satisfied the exhaustion requirement).[4] The Government's hyper technical argument on exhaustion is unpersuasive, but the conclusions of the other courts that have rejected it is quite persuasive to me. Accordingly, I adopt it.

---

[4]   This is consistent with the majority of other jurisdictions that have considered "issue preclusion" in the context of compassionate release motions. *See United States v. Torres*, 464 F.Supp.3d 651, 655 (S.D.N.Y. 2020); *United States v. Hossain*, 465 F.Supp.3d 114, 118-19 (N.D.N.Y. 2020); *United States v. Brown*, 457 F.Supp.3d 691, 696-97 (S.D. Iowa 2020); *United States v. Dillard*, 456 F.Supp.3d 1210, 1212 (D. Idaho 2020). *But see United States v. Butcher*, No. 5:12CR24, 2020 WL 2610738 (N.D. Ohio May 22, 2020) (strictly construing the statutory exhaustion requirement).

Under 18 U.S.C. § 3582(c)(1)(A), the only pre-requisite to Mr. Azianbidji filing in this Court is that he waits "30 days from the receipt of such a request by the warden." The Government concedes that Mr. Azianbidji made a request for compassionate release with the warden on May 16, 2020. Gov't Resp. 5. Mr. Azianbidji's request was denied by the warden on June 24, 2020. Warden Response, Ex. 2, ECF No. 332. Mr. Azianbidji subsequently filed his motion with this Court on August 28, 2020. Mot. Mem. 19.  Thus, the 30-day period was met; Mr. Azianbidji has fulfilled his administrative exhaustion requirement.

**II.     Extraordinary and Compelling Reasons**

Second, I must determine whether "extraordinary and compelling reasons" warrant a sentence reduction and that such a reduction is "consistent" with Sentencing Commission statements. 18 U.S.C. § 3582(c)(1)(A). I join with the majority of courts finding that 18 U.S.C. § 3582(c)(1)(A)(i) as amended grants courts with independent discretion to decide whether there are "extraordinary and compelling reasons" to modify a sentence and does not require that a court defer to the Sentencing Commission's policy statements regarding this question. *See United States v. Wise*, ELH-18-72, 2020 WL 2614816, at *7-9 (D. Md. May 22, 2020) (holding the same and collecting cases). As the Fourth Circuit observed, district courts have discretion to independently assess whether circumstances meet the extraordinary and compelling threshold. *United States v. McCoy*, 981 F.3d 271, 281-82 (4th Cir. 2020). More specifically, "district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citing *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020). However, while not binding, *id.*, the Sentencing Commission's policy statements may provide useful guidance.

The Sentencing Commission's policy statements in U.S.S.G. § 1B1.13 offer guidance here. Section 1B1.13 recites the language of 18 U.S.C. § 3582(c)(1)(A) before it was amended in 2018,

including the statement that "the defendant is not a danger to the safety of any other person or to the community." The commentary to the policy statement provides four examples of what constitutes "extraordinary and compelling reasons" for a sentence reduction: (1) medical condition of the defendant; (2) age of the defendant; (3) family circumstances; and (4) a catch-all "other reasons." U.S.S.G. § 1B1.13 app. note 1(A)–(C).

The Government argues that Mr. Azianbidji has failed to prove extraordinary and compelling circumstances because his medical conditions do not place him at "serious risk of becoming severely ill from COVID-19." Gov't Resp. 9 (internal citation omitted). Instead, the Government contends that Defendant's characterizations "overstate the seriousness of the [] medical conditions." *Id.* at 8. Specifically, the Government asserts that "there is no evidence that the Defendant currently suffers from hypertension or cardiovascular disease." *Id.* at 9. The Government also notes that while the CDC has identified hypertension as a condition that *might* place Mr. Azianbidji at a higher risk for severe illness, this "does not necessarily translate to compassionate release." *Id.* at 13.

While the classifications of Mr. Azianbidji's medical conditions are disputed, there is ample evidence that his conditions may put him at an increased risk of severe illness should he contract COVID-19. Mr. Azianbidji's medical records confirm that, at a minimum, he suffers from hyperlipidemia, cardiac risk factors (elevated blood pressure), and is obese. Medical Records 2-3, 6, ECF No. 334. Mr. Azianbidji is prescribed medications to treat his conditions. Mot. Mem. 3. Although the Government contends that Mr. Azianbidji's physician failed to check a box indicating that he suffers from hypertension, his most recent blood pressure reading of 152/104 places him into the "High Blood Pressure (Hypertension) Stage 2" category. *See* Healthy and Unhealthy Blood Pressure Ranges, https://www.heart.org/en/health-topics/high-blood-

7

pressure/understanding-blood-pressure-readings (last visited Jan 14, 2021). Hypertension alone has qualified as an extraordinary and compelling circumstance sufficient to justify compassionate release. *E.g., United States v. Benning*, No. 16-cr-0527-PWG, 2020 WL 7054823, at *2 (D. Md. Dec. 2, 2020). Additionally, although not specifically in an at-risk category, Mr. Azianbidji is 51 years old and, as a general proposition, the more advanced an individual is in age, the more likely they are to suffer the worst consequences of COVID-19.

Judges in this court have found that the standard of extraordinary and compelling reasons was met during the COVID-19 pandemic where a defendant had serious medical problems that placed them at high risk for complications if they contracted COVID-19. *See, e.g.*, *United States v. Jennings*, Case No.: 13-cr-46-PWG, 2020 WL 4748462, at *4 (D. Md. Aug. 17, 2020) (citing cases in this court and others and the application of multiple conditions). Certainly, the situation regarding COVID-19 is rapidly evolving, and new information about the virus and risk factors must be taken into account, as well as the changing conditions at prison facilities, for better or worse.

I find Mr. Azianbidji's age and medical conditions, and the potential for severe illness from COVID-19 that those traits invite, constitute extraordinary and compelling circumstances justifying a sentence modification. These concerns are further considered in the analysis of the sentencing factors.

**III.  Sentencing Factors**

A finding of "compelling and extraordinary reasons" is a necessary, not sufficient, condition for compassionate release. This Court must also consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the

8

defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the sentencing guideline ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense."

Here, Mr. Azianbidji committed the instant offense after demonstrating a pattern of committing similar lesser offenses. Gov. Resp. 18-19. Further, Mr. Azianbidji currently has an outstanding warrant in Montgomery County, Maryland for theft. *Id.* at 19. However, despite his lengthy criminal history, this is the first significant term of imprisonment that Mr. Azianbidji has served. To that end, Mr. Azianbidji has served more than 75% of the sentence and has been by all accounts a "model inmate." Reply 10. Throughout his incarceration, Mr. Azianbidji has completed several educational classes, Educational Certificates, Ex. 6, ECF No. 332, and has worked on the maintenance/cleaning detail. Reply 10. Further, Mr. Azianbidji has been infraction free for at least the last six months of his incarceration. Reentry Plan, Ex. 5, ECF No. 332.

As for the need for this particular sentence and types of available sentences, the main concern is public safety. Releasing Mr. Azianbidji to a term of supervised release will protect the community while avoiding the risk that Mr. Azianbidji is exposed to COVID-19 inside of Moshannon Valley CI. Mr. Azianbidji has a release plan with a place to live, a career path, a support system, and a method of obtaining medical insurance. Mot. Mem. 4. Upon release, Mr. Azianbidji plans to resume his prior employment as a commercial driver. *Id.* This employment will jumpstart Mr. Azianbidji's ability to pay the $339,000.00 in restitution this Court ordered. *See* Judgment.

In its brief, the Government asserts that Mr. Azianbidji's detainers, issued by the Bureau of Immigration and Customs Enforcement ("ICE") and the State of Maryland, present

"insurmountable obstacles to his full release." Gov't Resp. 4. This Court understands that Mr. Azianbidji is a permanent legal resident of the United States, but his Green Card is subject to revocation due to fraud or criminal activity. *Id.* at 7. Further, Mr. Azianbidji has an active warrant in Montgomery County, Maryland stemming from a failure to appear on a 2017 misdemeanor theft charge. Reply 5. The Government, after consulting with an attorney in the BOP Mid-Atlantic Regional Office, asserts that the ICE detainer will take precedence over the State detainer. Gov. Resp. 7. As a result, "upon completion of the Defendant's custodial sentence, he will be turned over to ICE and placed into detention." *Id.* This Court joins with others in ruling that the mere presence of detainers does not require the denial of a motion for compassionate release. *See, e.g., United States v. Mel*, CA No. TDC-18-0571, 2020 WL 2041674 (D. Md. April 28, 2020) (granting compassionate release despite the presence of an immigration detainer); *United States v. Bornales*, No. 2:05cr134, 2020 WL6544305 (E.D. Va. Nov. 6, 2020) (same).

Considering all of the circumstances, I find that granting release at this time would be consistent with the sentencing factors set forth in § 3553(a). Therefore, the Court GRANTS Mr. Azianbidji's motion and reduces his prison sentence in this case to time served. All other conditions of Mr. Azianbidji's sentence, including his supervised release and restitution, remain in effect. Further, Mr. Azianbidji shall be released into the custody of ICE for further proceedings on his detainer.

## CONCLUSION

The Court recognizes the seriousness of the COVID-19 pandemic and the risks that Mr. Azianbidji faces based on his medical conditions. I find that he has exhausted his administrative remedies, shown extraordinary and compelling reasons for a sentence modification, and demonstrated that the applicable sentencing factors justify such a modification. Therefore, Mr.

Azianbidji's motion for compassionate release is GRANTED. Mr. Azianbidji's previously imposed prison sentence is reduced to time served.

The Court also stays this order for fourteen days to allow the Defendant to make any applications to ICE regarding the immigration detainer and to allow the BOP to make any necessary arrangements for the defendant's release. In the event that Mr. Azianbidji is released to the community rather than held by immigration authorities, upon release he shall begin his three-year term of supervised release set forth in the original judgment.

## ORDER

For the reasons stated in this Memorandum Opinion and Order, it is this 29th day of January 2021, hereby ORDERED that Mr. Azianbidji's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 332 is GRANTED. His sentence is reduced to time-served. It is further ORDERED that this Order is STAYED for 14 days, after which the BOP shall release Mr. Azianbidji to the custody of ICE.

_____/S/_____
Paul W. Grimm
United States District Judge